FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2018 JAN -9 P 3:38

CLERK'S OFFICE
AT GREENBELT

BY_____

IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF MARYLAND**
Southern Division

|  |  |  |
|---|---|---|
| ADOBE SYSTEMS INCORPORATED, *et. al* | * | |
| Plaintiffs, | * | Case No.: GJH-17-648 |
| v. | * | |
| JOHN P. GARDINER, *et. al* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Adobe Systems Incorporated and Adobe Systems Federal LLC (collectively, "Adobe" or "Plaintiffs") bring this action against former employee John P. Gardiner, Open Market Energy LLC, Plurality Energy Solutions, LLC, and VAR Solutions LLC (collectively, "Defendants") alleging that Defendants engaged in a self-dealing scheme, improperly sharing confidential information and collecting payment for sales to which they were not entitled. Plaintiffs bring the following counts against some or all of the Defendants: Breach of Fiduciary Duty (Count I), Breach of Duty of Loyalty (Count II), Breach of Duty of Confidentiality (Count III); Aiding and Abetting Breach of Fiduciary Duties (Count IV); Breach of Employment Contract (Count V); Breach of Reseller Agreements and Partner Code of Conduct (Count VI); Breach of Covenant of Good Faith and Fair Dealing (Count VII); Fraud (Count VIII); and Civil Conspiracy to Defraud (Count IX). Defendants individually move to dismiss all but Count V and

Count VI,[1] *see* ECF Nos. 12, 19, 22, 25, and a hearing was held on November 15, 2017. For the following reasons, Defendants' Motions to Dismiss are granted, in part, and denied, in part.

I. BACKGROUND[2]

A. Parties

Adobe Systems Incorporated ("Adobe Incorporated") is a Delaware corporation with its principal place of business in San Jose, California. ECF No. 1 ¶ 11. Adobe Incorporated is a large software company that markets and licenses its products to customers through its sales force and also distributes its products through a network of distributors, value-added resellers, systems integrators, independent software vendors, retailers and original equipment manufacturers. *Id.* Adobe Systems Federal LLC ("Adobe Federal") is a wholly-owned subsidiary of Adobe Incorporated and a Delaware corporation with its principal place of business in McLean, Virginia. *Id.* ¶ 12.

Defendant Gardiner was employed by Adobe Federal from 2005 to March 3, 2017, and served as a sales representative within Adobe's Public Sector team. *Id.* ¶ 14. The Public Sector team oversees the marketing of Adobe Connect, which is a software designed to facilitate web conferencing. *Id.* ¶¶ 14, 16. Adobe does not license Adobe Connect directly to the federal government; rather, Adobe typically licenses Adobe Connect to a distributor who then licenses it to the federal government directly or through an Adobe Connect authorized reseller. *Id.* ¶ 14. As an Adobe Connect sales representative, Gardiner was responsible for generating interest in

---

[1] Adobe contends that VAR Solutions' Motion to Dismiss is untimely filed. Adobe states that it properly served VAR Solutions on April 3, 2017 under Maryland Rule 3-124(o)(iii), which permits substituted service on the State Department of Assessments and Taxation after two good-faith attempts to serve a resident agent. ECF No. 15. Therefore, VAR Solutions' motion to dismiss, filed on June 6, 2017, was not timely pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i). VAR Solutions response to Adobe on this point is not persuasive. *See* ECF No. 36 at n.1. However, Adobe did not move to strike VAR Solution's motion to dismiss, and it is most efficient for the Court to consider VAR Solution's motion alongside those from the other defendants.

[2] Unless stated otherwise, the facts are taken from the Complaint and assumed to be true.

2

Adobe Connect amongst resellers and the federal government and providing distributors or authorized resellers with bid requests from end users. *Id.* ¶ 15.

Defendant Gardiner is also alleged to be the sole owner and principal corporate officer of Open Market Energy LLC ("OME"). OME is an energy advisor that helps clients find deals on electricity and natural gas, with its principal place of business at 7625 Wisconsin Ave., Suite 300, Bethesda, Maryland, 20814. Defendant Plurality became an authorized reseller in September 2012. *Id.* ¶ 17. At that time, Defendant Gardiner was an officer of Plurality and held the title of Vice President. *Id.* ¶ 36. Plurality is a Mississippi company with its principal place of business in Bay St. Louis, Mississippi but also maintains an office at 7625 Wisconsin Avenue, Suite 300. *Id.* ¶ 17. VAR Solutions LLC ("VAR Solutions") is a Maryland corporation also with its principal place of business at 7625 Wisconsin Avenue, Suite 300. *Id.* ¶ 18. VAR Solutions is owned by Matthew Gardiner, Defendant Gardiner's brother. *Id.*[3]

### B. Adobe Connect Program Agreements

To become an authorized Adobe Connect reseller, an interested company must be approved by Adobe and execute an Adobe Connect Value Added Reseller Agreement ("Reseller Agreement"). *Id.* ¶ 20. The Reseller Agreement contains restrictions on the reseller's use of confidential information provided by Adobe and allows Adobe to terminate the contract should the reseller misuse the confidential information. *Id.* Authorized resellers can also participate in the Adobe Connection Deal Registration Program, which offers incentives of up to 20% of the value of the deal to resellers that help facilitate licenses of Adobe Connect to end users. *Id.* ¶ 21. Resellers typically obtain credit for such deals by registering them in a Salesforce.com database.

---

[3] Defendant Gardiner denies that he is an owner of Open Market Energy LLC, was an officer of Plurality, or had any financial stake in the companies. *See* ECF No. 1 ¶ 45; ECF No. 21 ¶¶ 16, 36. However, for purposes of Defendants' motions to dismiss, the Court accepts these facts as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

*Id.* Adobe maintains the database and relies on its sales representatives to confirm the reseller's involvement in the underlying deal registration. *Id.* Plurality was an authorized reseller and participated in the Adobe Connect Deal Registration Program. *Id.*

Authorized resellers must also comply with the authorized reseller Program Guide and complete the North America Vendor Questionnaire. *Id.* ¶¶ 22, 23. Per the Program Guide, "[resellers] agree to only enter valid information" when registering deals, and "deals which are already being managed by an Adobe Sales Rep, in which no partner involvement is required" do not qualify for deal registrations. *Id.* ¶ 22. Per the Vendor Questionnaire, resellers agree not to "pay, promise or offer to pay, directly or indirectly, any money or any other thing of value to any person for the purpose of improperly influencing any decision or action on behalf of Adobe" and must disclose if any of its "employees, owners, officers or directors" are "also current or former employees of Adobe or spouses or close family members of Adobe employees." *Id.* ¶ 23. The Vendor Questionnaire also requires authorized resellers to follow Adobe's Business Partner Code of Conduct ("Partner Code"), which provides that "Adobe employees and their family members may not hold any significant economic interest in any entity that does business with Adobe and business partners are required to avoid such relationships with Adobe employees." *Id.* ¶ 26.

Defendant Gardiner, as an employee of Adobe, was subject to the same Conflicts of Interest Policy contained in the Partner Code and was required to periodically execute Adobe's Conflicts Questionnaire, in which he was obligated to disclose any actual or potential conflicts of interest with his work for Adobe, "including whether he or a related party is employed by, or holds an investment in, any Adobe customer, channel partner, or supplier." *Id.* ¶ 29. Gardiner completed the Conflicts Questionnaire in 2014, 2015, and 2016 and answered each pertinent

4

question pertaining to conflicts of interest in the negative. *Id.* Similar prohibitions on conflicts of interest are contained in Adobe's Business Conduct Code, Anti-Corruption Policy, and Public Sector Code to which Gardiner and Plurality were obligated to follow. *Id.* ¶¶ 32–34.

### C. Alleged Kickback Scheme

Adobe alleges that Gardiner facilitated approval of Plurality as an Adobe Connect reseller in September of 2012. *Id.* ¶ 35. Specifically, on September 21, 2012, Gardiner organized via email a "Plurality Reseller Discussion" with the officers of Plurality and later represented to Adobe that Plurality was interested in becoming an authorized Adobe Connect reseller. *Id.* While Plurality did not meet the requirements to become a reseller, Gardiner was able to push through Plurality's approval even though Plurality had not yet completed the business plan and paperwork as required. *Id.* On October 5, 2012, Gardiner organized another meeting with Plurality officers, with the calendar invitation titled "Plurality Company Structure and meetings." *Id.* At this same time, Gardiner, through his wholly-owned company OME, wired $20,000 to Plurality as a loan and on October 24, 2012, sent an email to Plurality indicating that "OME would loan Plurality more money 'so we can meet our numbers.'" *Id.* ¶ 36. At no point did Gardiner or Plurality disclose Gardiner's role as Vice President of Plurality or any association with OME.

Once Plurality became an authorized reseller, Gardiner allegedly directed a scheme whereby he would provide Plurality with confidential information regarding deal registration opportunities, allowing Plurality to either match or beat potential bids from other resellers or obtain credit for deals generated by, or solely directed to, Gardiner even though Plurality had not contributed to the deal in a meaningful way. *Id.* ¶¶ 38, 40. Gardiner used his role at Adobe to

5

approve the deal registrations whenever Plurality ran into problems. *Id.* ¶ 39. Cumulatively, Adobe has paid over $5 million to Plurality in deal registration payments. *Id.* ¶ 43.

In addition to Plurality, Adobe alleges that Gardiner shared confidential information with, and directed deals to, other resellers. *Id.* ¶ 41. These resellers did not compensate Gardiner directly; rather, VAR Solutions would obtain payment from these resellers through fabricated invoices for consulting services, "despite VAR Solutions having not contributed to the deal or provided *bona fide* consulting services." *Id.* ¶ 41. VAR Solutions then transferred payments relating to the deal registrations to Gardiner either through transfers to OME or investments made on Gardiner's behalf, including investing in the entity that owns the Bethesda building housing offices for OME, VAR Solutions, and Plurality. *Id.* Adobe alleges that Plurality coordinated a similar effort to compensate Gardiner for his role in securing their deal registrations. *Id.*

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of the Plaintiff's claims, the Court "must accept as true all of the factual allegations contained in the complaint," and "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637

F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court should not grant a motion to dismiss for failure to state a claim for relief unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

Furthermore, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, plaintiffs "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)) (internal quotation marks omitted). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *Id.* (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)) (internal quotation marks omitted).

## III. DISCUSSION[4]

### A. Breach of Fiduciary Duties (Counts I-IV)

Adobe alleges that Gardiner breached his fiduciary duty, duty of loyalty, and duty of confidentiality owed to Adobe by failing to disclose his involvement with Plurality and VAR Solutions, providing confidential information to Plurality, and allowing Plurality to obtain credit for deals it was not permitted to register for. Adobe also alleges that OME, Plurality, and VAR Solutions aided and abetted Gardiner's breach of these fiduciary duties. All Defendants move to dismiss these counts, arguing that Maryland does not recognize breach of a fiduciary duty as an individual tort. As this is a question of state law, the Court will look to the highest court in Maryland for guidance, *see Toghill v. Clarke*, 877 F.3d 547, 557–58 (4th Cir. 2017) (when construing state law, federal courts are bound by the construction given to it by the state's highest court), but cases interpreting the leading case from the Maryland Court of Appeals leave this issue far from clear.

In *Kann v. Kann*, 244 Md. 689, 713 (1997), the Maryland Court of Appeals held that "there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries." However, the court clarified, stating that "[t]his does not mean that there is no claim or cause of action available for breach of fiduciary duty. Our holding only means that identifying a breach of fiduciary duty will be the beginning of the analysis, and not its conclusion." *Id.* The court instructed that plaintiffs bringing such claims must "identify the particular fiduciary

---

[4] Separate from the count-specific arguments made in support of its motion to dismiss, Plurality argues that Adobe's Complaint, brought on behalf of both Adobe Incorporated and Adobe Federal, does not make any allegations as to the relationship between Adobe Federal and Plurality and "[w]hen the Court cannot make that determination as to which Plaintiff relates to which claim, the Complaint should be dismissed under Rule 8(a)(2)." ECF No 12-1 at 6. The Court understands that Adobe Federal's claims relate to its employment of Gardiner, and Adobe Incorporated's claims relate to its contractual relationship with Plurality as a reseller and will not dismiss any counts on these grounds.

relationship involved, identify how it was breached, consider the remedies available, and select those remedies appropriate." *Id.*

Following *Kann*, courts applying Maryland law have differed in recognizing when a plaintiff may bring this cause of action. In *BEP, Inc. v. Atkinson*, a judge in this Court concluded that a "plaintiff has, pursuant to *Kann*, properly asserted under Maryland law a claim of breach of fiduciary duty" when plaintiff established that a high-level management employee diverted plaintiff's business to himself. 174 F. Supp. 2d 400, 405–06 (D. Md. 2001); *see also Giddens v. CorePartners, Inc.*, No. JKB-10-3357, 2011 WL 2934855, at *5 (D. Md. July 18, 2011) (dismissing claim but noting that, pursuant to *Kann*, Maryland recognizes a tort for breach of fiduciary duty when "a plaintiff identifies the appropriate fiduciary relationship . . . identifies how the relationship was breached, considers the available remedies, and selects the remedies appropriate to the plaintiff's problem"); *In re LandAmerica Financial Group, Inc.*, 470 B.R. 759, 794–95 (Bankr. E.D. Va. 2012) (recognizing independent claim for breach of fiduciary duty because *Kann* only bars the claim when a plaintiff seeks damages without having incurred an actual economic loss). Other courts have not recognized a breach of a fiduciary duty as an independent claim, especially where plaintiffs also bring a claim for breach of contract, or have limited such a claim to equitable relief. *See Dynacorp v. Aramtel*, 208 Md. App. 403, 493–94 (2012) (citing *George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, 197 Md. App. 586, 631–32 (2011) ("an alleged breach of fiduciary duty may give rise to a cause of action [such as breach of contract], but it does not, standing alone, constitute a cause of action")); *see also Allstate Ins. Co. v. Warns*, No. CCB-11-1846, 2012 WL 681792, at *7 (D. Md. Feb. 29, 2012) ("In the aftermath of *Kann*, Maryland courts have limited independent causes of action for

breach of fiduciary duty to those seeking equitable relief . . . and any claim for compensatory damages will have to be supported by a successful breach of contract action.")

The only case identified from the Maryland Court of Appeals addressing this issue since *Kann* is *International Brotherhood of Teamsters v. Willis Corroon Corp. of Maryland*, which addressed the issue in a footnote. There, the court stated that in *Kann* "we pointed out that, although the breach of a fiduciary duty may give rise to one or more causes of action, in tort or in contract, Maryland does not recognize a separate tort action for breach of fiduciary duty." 369 Md. 724, 727 n.1 (2002). But even this language, found in a footnote, does not eliminate the possibility of claims specifying claims for breaches of loyalty or confidentiality.

With persuasive authority pointing in different directions, the Court returns to the language in *Kann*. The court there forbade an omnibus claim for breach of fiduciary duty that could be applied to any fiduciary duty and for any breach. Coupled with the footnote in *International Brotherhood*, the Court finds that Count I, which addresses "Breach of Fiduciary Duty" in broad terms, cannot survive. But *Kann* just as clearly stated that such a claim could be asserted if it involved an identified fiduciary relationship and an identified breach.

Here, Counts II and III do not assert an "omnibus tort for the redress of breach of fiduciary duty" that *Kann* clearly bars; rather, Adobe sets forth specific breaches of specific fiduciary duties that have allegedly resulted in economic losses not otherwise redressable through separate causes of action. *Kann*, 244 Md. at 713. As the *In re Land America* court noted, *Kann* declined to recognize a general tort that would provide relief to plaintiffs incurring only non-economic damages or damages following an inadvertent breach by the agent. *See In re LandAmerica*, 470 B.R. at 794–95 (citing *Kann*, 244 Md. at 520). Here, Adobe has pled that Gardiner, as an employee, owed Adobe specific fiduciary duties of loyalty and confidentiality.

10

*See Quality Systems, Inc. v. Warman*, 132 F. Supp. 2d 349, 354 (D. Md. 2001) (citing *Maryland Metals v. Metzner*, 282 Md. 31 (1978) ("In every employment contract, there is an implied duty [of loyalty] that an employee must act solely for the benefit of his employer in all matters within the scope of his employment.")); *Allstate*, 2012 WL 681792, at *6 (describing duty of confidentiality as "a common law fiduciary duty of agents not to disclose confidential information of the principal"). Gardiner then allegedly breached those duties by providing confidential Adobe Connect deal information to Plurality, allowing Plurality to gain financial incentives at Adobe's expense. ECF No. 1 ¶ 53. Moreover, as Adobe acknowledges, Gardiner's employment contract may not prohibit all of the misconduct associated with his alleged kickback scheme, ECF No. 30 at 8, and its claims for breaches of the duty of loyalty and confidentiality are therefore appropriate remedies at this time. *See Wasserman*, 197 Md. App. At 631–32 (allegations supporting breach of fiduciary duty "do not constitute a stand alone *nonduplicative* cause of action") (emphasis added).

While the Court finds that Adobe may not proceed with its claim for "Breach of Fiduciary Duty," the Court reads Count IV, "Aiding and Abetting Breach of Fiduciary Duties," to include Gardiner's alleged breach of a broad fiduciary duty, as well as breach of the specific fiduciary duties of loyalty and confidentiality. Because Adobe may proceed with its claims of breach of the fiduciary duties of loyalty and confidentiality, the Court must now determine whether the remaining Defendants may be liable for aiding and abetting the breach. *See Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 201 (1995) ("tort liability of aiding and abetting can only exist where someone has committed the actual tort"). In addition to proving the underlying tort, to bring a claim of aiding and abetting, Adobe must establish that the remaining defendants engaged in "acts of encouragement or assistance to the person actually

committing the wrongful act." *See Saadeh v. Saadeh, Inc.*, 150 Md. App. 305, 328 (2003). Here, Adobe has pleaded sufficient facts to support an aiding and abetting claim against Plurality and VAR Solutions, but not OME.

Plurality and VAR Solutions allegedly engaged in a cycle whereby they would provide kickbacks to Gardiner for knowingly sharing Adobe's confidential information and causing Adobe to over-compensate its vendors, encouraging Gardiner to continue to breach his fiduciary duties. Adobe alleges that Plurality not only received confidential information from Gardiner, but also acted on, and profited from, the exchange. ECF No. 1 ¶ 38. Moreover, Plurality allegedly shared its ill-gotten proceeds with Gardiner. *Id.* ¶ 44. Similarly, VAR Solutions allegedly assisted in Gardiner's spread of confidential information, issuing false invoices in order to provide cover for the funneling of proceeds back to Gardiner. *Id.* ¶ 41. While VAR Solution's alleged role is not as clearly established as Plurality's, its encouragement of Gardiner's alleged breach is nonetheless plausible.[5]

However, the same cannot be said for OME. OME's alleged participation in the kickback scheme is limited to providing loans to Plurality prior to Plurality becoming an Adobe Connect authorized reseller. Simply put, the Complaint does not provide a clear link between this alleged loan and Gardiner's alleged breaches. As such, OME cannot be held liable for Gardiner's breach of fiduciary duties based on the allegations in the Complaint.

---

[5] While much of Adobe's Complaint rests on facts pleaded upon "information and belief," *see, e.g.*, ECF No 1 ¶ 41 ("[o]n information and belief, VAR Solution [sic] subsequently transferred payments relating to the deal registrations to Mr. Gardiner"), a plaintiff is generally permitted to plead facts in this way if the necessary evidence is controlled by the defendant. *See Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 456 (E.D. Va. 2015). Here, Adobe would not be privy to transactions between VAR Solutions and Gardiner, acting in his personal capacity, and need not have actual proof of these transactions to survive a motion to dismiss.

## B. Breach of Covenant of Good Faith and Fair Dealing (Count VII)

Adobe alleges that Gardiner and Plurality breached the covenant of good faith and fair dealing implicit in Gardiner's Employment Agreement and Plurality's Reseller Agreement by failing to disclose their conflicts of interest and causing Adobe to expend fees for improper deal registrations. ECF No. 1 ¶ 81. Gardiner and Plurality move to dismiss this count, arguing that such a breach is not an independent cause of action in Maryland. *See* ECF No. 12-1 at 6; ECF No. 22 at 10.[6] However, breach of the implied covenant is part of a breach of contract claim under Maryland law. *See Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 794 (D. Md. 2002). While Adobe does not dispute that Maryland does *not* recognize this claim, Adobe contends that Gardiner's Employment Agreement and Plurality's Reseller Agreement are subject to California law. *See* ECF No. 16 at 6; ECF No. 30 at 12. In reply to Plaintiffs' opposition brief, ECF Nos. 16, 30, neither defendant disputes that such a claim is valid under California law.

"[A] federal court exercising diversity jurisdiction must follow the choice-of-law rules of the state where the action is filed to determine which state's substantive law to apply." *See RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 665 (D. Md. 2009) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)) ("[A] federal court exercising diversity jurisdiction must follow the choice-of-law rules of the state where the action is filed to determine which state's substantive law to apply."). "Under Maryland law, this Court should presume that a [party's] choice of law is enforceable." *Ameritox, Ltd. v. Savelich*, 92 F. Supp. 3d 389, 396 (D. Md. 2015) (citing *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011)).

---

[6] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Adobe's Complaint states that Adobe and Plurality were parties to Adobe Connect's Value Added Reseller Agreement ("Reseller Agreement"), ECF No. 1 ¶ 78, and Adobe has provided the Court with a copy of the Agreement showing that the laws of the State of California apply.[7] *See* ECF No. 16-1 at 18. Regarding Gardiner, Adobe's Complaint states that Adobe and Gardiner were parties to an Employment Agreement. ECF No. 1 ¶ 28. Adobe has provided the Court with a copy of an Employee Inventions and Proprietary Rights Assignment Agreement ("Assignment Agreement") that, similar to the Value Added Reseller Agreement, is subject to California law. ECF No. 30-1 at 11. However, the Complaint makes no mention of the Assignment Agreement nor suggests how the Assignment Agreement relates to the Employment Agreement that Gardiner allegedly violated. During the hearing, Adobe indicated that the "Employment Agreement" referenced in the Complaint was likely a collection of documents signed by Gardiner, but Adobe was unable to state whether this collection included the Assignment Agreement itself. Therefore, the Court has no basis to find that California law applies to Gardiner's alleged breach of the Employment Agreement, and the Court will dismiss the Breach of Covenant of Good Faith and Fair Dealing claim against Gardiner. However, because California law does apply to the Reseller Agreement, the Court will not dismiss this claim against Plurality.

### C. Fraud (Count VIII)

Adobe alleges that Gardiner, OME, and Plurality knowingly and intentional mislead Adobe by engaging in the alleged kickback scheme and concealing their relationship from Adobe. ECF No. 1 ¶ 91. "In order to recover damages in an action for fraud or deceit, a plaintiff must prove (1) that the defendant made a false representation to the plaintiff, (2) that its falsity

---

[7] The Court may take judicial notice of a document "attached or incorporated into the complaint" *E.I. du Pont de Nemours & Co. v. Kolon Indus. Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). The choice of law provision is readily apparent and not subject to reasonable dispute. See Fed. R. Evid. 201(b)(2).

was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." OME and Plurality move to dismiss this count, arguing that Adobe's Complaint fails to adequately plead the elements of fraud with "particularity" as required by Rule 9(b). *See* ECF No. 19-1 at 7; ECF No. 12-1 at 7.

### 1. OME

OME argues that the Complaint fails to state that OME made any false representations to Adobe. While OME, as an entity, did not make any representations (false or otherwise) to Adobe, Adobe contends that OME is liable for the fraudulent actions of Gardiner, its agent and purported owner. ECF No. 31 at 11. As a general matter, an agency relationship "arises from the manifestation of the principal to the agent that the agent will act on the principal's behalf." *See Jackson v. 2109 Brandywine, LLC*, 180 Md. App. 535, 565 (2008) (citing *Anderson v. General Cas. Ins. Co.*, 402 Md. 326, 247 (2007)). An agency relationship can be actual, whereby the principal holds out the agent as possessing its authority, or implied, whereby the words or conduct of the principal suggest that the principal has authorized the conduct of the agent. *See id.* (citing *Homa v. Friendly Mobile Manor*, 93 Md. App. 337, 360 (1992) and *Johns Hopkins University v. Ritter*, 113 Md. App. 77, 96 (1996)). Moreover, the principal may only be liable for the conduct of its agent when the agent is acting within the scope of his authority. *See Progressive Cas. Ins. Co. v. Ehrhardt*, 69 Md. App. 431, 439 (1986) (citing *Colonial Building & Loan Co. v. Boden*, 169 Md. 493 (1936) ("Authorized agents may subject the principal . . . to

personal liability and create rights in its favor. This ability to bind the principal, however, is limited to the extent in which the agent is authorized to act.")).

"When an agency relationship is allegedly part of the fraud, the circumstances constituting fraud on the part of the purported principal, which must be pled with particularity under Rule 9(b), include both the facts constituting the underlying fraud and the facts establishing the agency relationship." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) (citing *Kolbeck v. LIT America, Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996)). Here, Adobe has not suggested that Gardiner was defrauding Adobe on OME's behalf or how any of his actions that form the basis of this litigation were taken in his role as an agent for OME. *See* ECF No. 1 ¶ 44 (alleging that the proceeds of the kick-back scheme were coming back to Gardiner himself). *Cf. In re Hoang*, 449 B.R. 850, 857–58 (Bankr. D. Md. 2011) (citing *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 359 (3d Cir. 2001) ("Under the law of imputation, an agent's fraud or applicable misconduct will be imputed to the [principal] if the agent commits the fraud (1) in the course of employment and (2) for the benefit of the principal.")). Without more, the mere fact that Gardiner allegedly misrepresented his interest in OME as part of his effort to enrich himself, while also being an agent of OME, is insufficient to impute his liability for fraud onto OME through their agency relationship.

### 2. Plurality

Plurality argues that Adobe fails to "state with particularity the circumstances constituting fraud." ECF No. 18 at 6. However, Adobe's complaint adequately pleads fraud on the part of Plurality. Adobe alleges that Plurality knowingly registered for deals generated without its involvement, causing Adobe to pay commissions to Plurality that it did not earn. ECF No. 1 ¶ 38. While Plurality argues that "there is nothing pled that implies that Plurality should

have known that it should not act on leads provided by [Gardiner] or that it was fraudulent to then register sales," Adobe does not allege that Plurality merely acted on improper leads to then effectuate product sales. Rather, Adobe alleges that Plurality registered for deals, and accepted commissions, without doing any actual work. By registering sales in Adobe's database, Plurality effectively represented to Adobe that it was entitled to receive compensation for sales attributable to other resellers. Such allegations state a claim for fraud.

### D. Conspiracy to Defraud (Count IX)

Finally, Adobe alleges that all Defendants engaged in a conspiracy to defraud by coordinating a scheme to submit fraudulent deal registrations to Adobe and remit portions of the proceeds to Gardiner through Plurality, OME, and VAR Solutions. ECF No. 1 ¶ 98. Because Adobe has adequately pleaded a claim for fraud against Gardiner and Plurality, the Court may consider whether any of the Defendants conspired to commit such fraud. *See Alleco, Inc.* 340 Md. at 199 (courts "should not entertain a claim for civil conspiracy to commit fraud unless the plaintiff has sufficiently alleged an underlying fraud"). To state a claim for civil conspiracy, a plaintiff must allege "(1) [a] confederation of two or more persons by agreement or understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and (3) actual legal damage resulting to the plaintiff." *See Zos v. Wells Fargo Bank, N.A.*, 2017 U.S. Dist. LEXIS 7247, at *10 (D. Md. Jan. 18, 2017) (quoting *Windesheim v. Larocca*, 443 Md. 312, 347 (2015)). A plaintiff must "specifically allege the agreement itself, including its time, place, and the identity of the co-conspirators. A plaintiff must also allege what [the Defendant] specifically did to carry the conspiracy into effect." *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 825 (D. Md. 2005). Similar to claims for fraud, "conspiracy to commit fraud must abide by Rule

17

9(b)'s particularity requirement." *Hill*, 383 F. Supp. 2d at 823; *see also Harrison*, 176 F.3d at 783 n. 5 (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997) ("lack of compliance with Rule 9(b)'s pleading requirement is treated as a failure to state a claim under Rule 12(b)(6)")).

### 1. Plurality

Plurality argues that Adobe has only set forth conclusory allegations of an agreement without providing the facts as to when and how the defendants brokered an agreement to engage in the alleged kickback scheme. ECF No. 12-1 at 8–9. However, Adobe's Complaint sets forth sufficient details to suggest that Gardiner and Plurality engaged in an agreement to conspire. Gardiner organized a meeting with Plurality officers at Plurality's headquarters on October 5, 2012, around the time in which Gardiner was trying to add Plurality as an Adobe Connect reseller. ECF No. 1 ¶¶ 35–36. In addition, Gardiner allegedly provided Plurality with confidential deal registration information so that Plurality could fraudulently register these deals and, when Plurality ran into problems, it requested the assistance of Gardiner in order to obtain approval. ECF No. 1 ¶¶ 38, 39. Beyond conclusory allegations, Adobe alleges the exact dates this correspondence occurred and the language Gardiner used. *See id.* ¶ 38 ("For instance, on October 19, 2012, Mr. Gardiner shared with Plurality via email a confidential internal quote for an Adobe Connect licensing opportunity to the U.S. Department of State. In sharing this confidential information with Plurality, Mr. Gardiner stated: 'here is a lay up for 8k.'"). These communications between Gardiner and Plurality are sufficient to establish their mutual agreement; Adobe need not allege that Gardiner and Plurality brokered a specific, formal arrangement. *See Windesheim v. Larocca*, 443 Md. 312, 348 (2015) ("Civil conspiracy may be proved by circumstantial evidence because in most cases it would be practically impossible to

prove a conspiracy by means of direct evidence alone.") (internal citation and quotation marks omitted). While Plurality suggests that "[t]hese allegations do not appear in the least bit conspiratorial, but rather they appear to be the typical interactions one would expect to find between Adobe and one of its resellers," ECF No. 18 at 8, Adobe has pled with particularity that Plurality, by understanding or agreement, conspired to defraud Adobe.

### 2. VAR Solutions and OME

Unlike its claim against Plurality, Adobe has not set forth sufficient details necessary to establish that VAR Solution or OME took specific action in planning or executing the underlying fraudulent kickback scheme. Adobe's Complaint alleges that VAR Solutions and OME were owned and operated by either Gardiner or an immediate family member and likewise operated within Gardiner's corporate office space, facts highly suggestive of their shared interests, close coordination, and position to profit from the alleged kickback scheme. *See Hoffman v. Stamper*, 385 Md. 1, 25–26 (2005) (citing *Western Md. Dairy v. Chenowith*, 180 Md. 236, 243 (1942) ("a conspiracy may be established by inference from the nature of the acts complained of, the individual and collective interest of the alleged conspirators, the situation and relation of the parties at the time of the commission of the acts, the motives which produced them, and all the surrounding circumstances . . ."). However, without specifying "what a defendant or defendants did to carry the conspiracy into effect," Adobe cannot maintain its claim for conspiracy. *Hill*, 383 F. Supp. 2d at 824 (quoting *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 297 (S.D.N.Y. 2000)).

Adobe sets forth VAR Solutions' possible role in the fraud—issuing fake invoices to enable resellers to remit payment back to Gardiner in exchange for his confidential information—but Adobe fails to allege when VAR Solutions issued the invoices, how many

were issued, and to whom they were issued. *See* ECF No. 1 ¶ 41. Thus, while the Complaint alleges VAR Solutions' role in aiding and abetting Gardiner's breach of his fiduciary duties, Rule 9(b) requires more for a claim of conspiracy to commit fraud.

Adobe's allegations against OME are even more speculative. OME's only overt act was wiring $20,000 to Plurality in September of 2012 ECF No. 1 ¶ 36. But Adobe fails to connect the act to the alleged fraud. The Court would have to assume that the funds were somehow used to enable Plurality to become an authorized reseller and, if so, further assume that OME knowingly provided the funds for this purpose. Similar to Count V, Adobe has not established that Gardiner was acting on behalf of OME as its agent such that it is liable for Gardiner's conduct. Without more, Adobe's conclusory allegations as to OME's role in the alleged conspiracy are insufficient.

### IV.     CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss, ECF Nos. 12, 19, 22, and 25, shall be granted, in part, and denied, in part. A separate Order follows.

Dated: January 9, 2018

GEORGE J. HAZEL
United States District Judge